J. O. Popwell and Julia Popwell v. Commissioner.
Popwell v. Commissioner
Docket No. 47464.
United States Tax Court
T.C. Memo 1958-62; 1958 Tax Ct. Memo LEXIS 167; 17 T.C.M. (CCH) 306; T.C.M. (RIA) 58062; April 16, 1958
*167 Winston B. McCall, Esq., and W. S. Pritchard, Esq., for the petitioners. Frederick T. Carney, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax and additions thereto of petitioners for the years 1949, 1950, and 1951, as follows: Sec.
Sec.
Sec.
Year
Deficiency
293(b)
294(d)(1)(A)
294(d)(2)
1949
$ 38,509.94
$ 19,254.97
$ 4,438.72
$ 2,663.22
1950
236,930.36
118,465.18
24,102.24
14,461.35
1951
6,980.02
3,490.01
985.32
591.18
By amended answer the respondent asks for increased deficiencies in income tax and additions thereto in amounts as follows: Increase in Additions to Tax
Amount of
Increase in
Sec.
Sec.
Sec.
Year
Deficiency
293(b)
294(d)(1)(A)
294(d)(2)
1949
$21,180.76
$10,590.38
$1,462.40
$1,270.85
1950
35,275.38
17,637.69
764.56
2,116.52
1951
13,253.68
6,626.84
1,086.99
790.36
The issues are: (1) Whether respondent correctly determined petitioners' income from gambling transactions in each of the taxable years; (2) Whether the respondent erroneously allowed a deduction for *168 certain business expenses; (3) Whether any part of the deficiencies is due to fraud with intent to evade tax; and (4) Whether petitioners are liable for additions to the tax under sections 294(a)(1)(A) and 294(d)(2), I.R.C. of 1939. Findings of Fact Some of the facts are stipulated and are so found. Petitioners are individuals residing in Shelby County, Alabama. They jointly filed Federal income tax returns for the taxable years involved with the collector of internal revenue for the district of Alabama at Birmingham, Alabama. J. O. Powell, hereinafter referred to as petitioner, was a professional gambler. During the taxable years involved petitioner operated two lotteries known as the "Big Six" and "Nighthawk" in Birmingham, Alabama. During the years 1949, 1950, and 1951, he operated a club located about 10 miles south of Birmingham. Petitioner also made book on various games and sporting events. Petitioner kept no books or records. He employed an accountant to prepare his Federal income tax returns for each of the taxable years in question. Petitioner did not supply the accountant with any information except a round figure which allegedly represented his net earnings *169 for the year. No itemized deductions were claimed. The accountant prepared the returns on the basis of the single amount given him and computed the tax using the standard deduction. Petitioner was convicted and served a sentence for gambling. He has also been convicted of other illegal offenses. The parties have stipulated that during the taxable years 1949 and 1950, petitioner won and lost in gambling transactions with individuals and clubs the following amounts: Year
Wins
Losses
1949
$ 66,378.97
$ 30,966.50
1950
1,014,160.50
710,687.50
On or about November 1, 1950, at the residence of John Connors in Montgomery, Alabama, petitioner engaged with several parties in various gambling transactions including dice, poker, and gin rummy games. At that time petitioner sustained losses in an amount of not less than $60,000. The loss at Montgomery is not included in the stipulated losses. During the taxable years 1949, 1950, and 1951, the gross receipts, expenses, and net income of petitioners from the lottery business were as follows: Gross
Net
Year
Receipts
Expenses
Income
1949
$57,000.00
$31,964.00
$25,036.00
1950
57,000.00
42,281.40
14,718.60
1951
26,331.26
23,539.55
2,791.71
*170 During the taxable years 1949, 1950, and 1951, petitioners operated a club located about 10 miles from Birmingham, Alabama. During the years 1950 and 1951, petitioner employed James Ragsdale to manage the club and paid him a weekly salary plus 10 per cent of the net profits as a commission. Petitioner received the other 90 per cent of the profits. Petitioner's net profit from the operation of the club was $26,000 in 1949, which he reported. Petitioner's net profit from the operation of the club in 1950 and 1951 was in the respective amounts of $18,225 and $29,700, no part of which was reported in the joint returns filed for such years. In the deficiency notice the respondent determined the net adjusted income of the petitioners to be as follows: 1949
1950
1951
$96,818.47
$345,716.60
$31,491.71 In determining petitioners' adjusted net income for the years 1949, 1950, and 1951, the respondent allowed deductions of the following amounts as business expenses of petitioners' lottery business: Attorneys'
Fines
Years
Salaries
Fees
and Costs
1949
$23,558.00
$6,000.00
$2,046.00
1950
[*] 6,270.00
6,018.00
1951
15,610.00
4,700.00
3,329.00
*171 The amount of net income reported, the actual net income and the amount of unreported net income of petitioners for the taxable years 1949, 1950, and 1951, are shown in the following schedule: Actual Net
Unreported
Year
Reported
Income
Net Income
1949
$26,000
$ 86,448.47
$ 60,448.47
1950
20,000
276,416.60
256,416.60
1951
14,200
32,491.71
18,291.71
During each of the taxable years 1949, 1950, and 1951, the petitioners filed false and fraudulent returns with intent to evade tax. A part of the deficiency for each of the taxable years is due to fraud with intent to evade tax. Petitioners did not file any declaration of estimated tax returns and made no payment of estimated tax for the years 1949, 1950, and 1951. Opinion LEMIRE, Judge: The respondent determined deficiencies in income tax and additions to the tax for fraud, for failure to file declarations of estimated tax, and for understatement of estimated tax against petitioners for each of the taxable years 1949, 1950, and 1951. Petitioners, on brief, challenge only the respondent's failure to recognize losses allegedly sustained by Popwell from individual gambling transactions *172 of amounts in excess of those stipulated. Petitioners have the burden of establishing such losses. Petitioners claim additional losses in the amount of $102,534.50 in 1949, $402,329.66 in 1950, and $35,000 in 1951. Included in the 1950 loss is the amount of $228,500 alleged to have been suffered in individual gambling transactions taking place in Montgomery, Alabama, on or about November 1, 1950, and which will be referred to separately. As to the balance of the losses claimed for each of the taxable years in question, petitioners rely on the self-serving declarations of Popwell as establishing such losses. Certain bank statements were offered in evidence showing certain deposits and withdrawals. The cancelled checks and the check stubs pertaining to such bank statements had been destroyed by Popwell for the purpose of avoiding detection. Popwell's testimony attempting to connect certain withdrawals shown on the bank statements which were made approximately six years prior to the hearing herein, as payments made to specific individuals for wagering losses, was not convincing in the light of the entire record. No one of the individuals to whom such payments were allegedly made was *173 sworn as a witness. We are not willing to accord full credibility to the unsupported testimony of Popwell. We hold that petitioners have failed to carry the burden of showing that losses, in excess of the amounts stipulated, were sustained in individual gambling transactions in the claimed amounts of $102,534 in 1949, $173,839.66 in 1950, and $35,000 in 1951. As to the further alleged loss in the amount of $228,500 sustained on or about November 1, 1950, the record contains the testimony of several witnesses that Popwell suffered a loss of a considerable amount on that date. We think it would serve no useful purpose to attempt to review the testimony of the various witnesses bearing on the loss in question. Much of it is confusing, conflicting, uncertain, and to some extent, based on hearsay. After a consideration of the evidence we are satisfied that it establishes that on or about November 1, 1950, at the residence of John Connors in Montgomery, Alabama, Popwell engaged in various wagering games with Connors and other individuals for high stakes and that Popwell sustained a considerable loss which is not included in the amount of losses stipulated for the year 1950. The definite *174 amount of the loss is not satisfactorily established. Connors had died prior to the hearing of this proceeding and no one of the other participants was called as a witness. Popwell testified that he had been drinking "pretty" good for sometime prior to engaging in the wagering games and continued to drink during the play. The record shows that his recollection of what occurred was very hazy. Clarence A. Steele, a special revenue agent, made an extensive examination of Popwell's gambling transactions. In the course of his investigation he interviewed Connors, who was the banker of the dice game, as well as various individuals who were participants or spectators at sometime during the play. Steele testified that Connors admitted winning $30,000 from Popwell at that session. Steele also located a participant, not identified, who admitted winning $3,500, but was unable to locate other participants who admitted winning any amount of consequence from Popwell at that time. On the basis of the record, and applying the principle of the case of Cohan v. Commissioner, 39 Fed. (2d) 540, we have found, as a fact, that Popwell suffered a wagering loss of not less than $60,000 to *175 Connors and others on or about November 1, 1950. That amount has been taken into consideration in determining the actual net income of petitioner for the taxable year 1950. By amended answer the respondent alleges that in determining the net income of petitioners for each of the taxable years involved, he erroneously allowed a deduction for business expenses incurred in the operation of the lottery business for each of the taxable years 1949, 1950, and 1951, and seeks increased deficiencies and additions to the tax. The expenses were allowed as "salaries," "attorneys' fees," and "fines and costs," and the amounts are set forth in our Findings of Fact. The burden of proof as to this issue is upon the respondent and he so concedes. The respondent has offered no proof as to the specific purposes or the circumstances of the payments, contending that to permit their deduction would frustrate clearly defined public policy. Since the filing of briefs, the respondent has advised the Court that he concedes that the amounts allowed as "salaries" are properly deductible as business expenses under the recent decision of the United States Supreme Court in the case of Commissioner v. Sullivan, *176 et al., 355 U.S. - (Mar. 17, 1958). In the posture of the present record, we are unable to determine whether the deductibility of all or any part of the amounts allowed by respondent, as "attorneys' fees," and "fines and costs," would frustrate clearly defined public policy under the principles laid down in the recent cases of Tank Truck Rental, Inc. v. Commissioner, 355 U.S. - and Hoover Motor Express, Inc., v. United States, 355 U.S. - (both decided Mar. 17, 1958). This record contains no basis for any allocation even if we may assume, as a matter of law, that some part of such payments related to condemned activities requiring a disallowance of their deduction. We hold, therefore, that the respondent has failed to carry the burden of showing that the deductions of the amounts which he allowed as business expenses of petitioners' lottery business were erroneous. We next consider whether the respondent has shown by clear and convincing evidence that petitioners filed false and fraudulent returns and that a part of the deficiencies are due to fraud with intent to evade tax. The record shows that Popwell was a professional gambler of long standing. In the taxable years in *177 question his only disclosed source of income was from wagering transactions. Popwell had been convicted and sentenced for illegal gambling, and had been convicted and fined for various other violations of law. He maintained no books and records and destroyed his cancelled checks and check stubs for the purpose of avoiding detection. The returns filed disclosed a single figure allegedly representing net income from his wagering activities. Popwell testified that "at the end of the year I filed enough to take care of the Government and I thought that was all that was necessary to stay out of trouble with them." In each of the taxable years involved the petitioners' net taxable income was understated by large amounts. The consistent understatement of substantial amounts of income is deemed persuasive evidence of fraud. In the light of this record as a whole, we hold that the respondent has shown by clear and convincing evidence that in each of the taxable years in question petitioners filed false and fraudulent returns, and that a part of the deficiency is due to fraud with intent to evade tax. Petitioners have offered no proof respecting the respondent's determination of additions *178 to the tax under sections 294(d)(1)(A) and 294(d)(2) of the 1939 Code, for each of the taxable years involved. Petitioners contend, on brief, that the evidence establishes that losses sustained from wagering transactions were in excess of the net income reported. The record does not support this contention. Under such circumstances, we sustain the additions to the tax under sections 294(d)(1)(A) and 294(d)(2) of the Code to the extent appropriate in accordance with this opinion. Increased deficiencies and additions to the tax resulting from a recomputation under Rule 50, if any, are hereby allowed. Decision will be entered under Rule 50.